# Hughes *v.* Parker & *a.*

A charter was granted to certain persons, " their associates, successors and assigns." *Held,* that the grantees could legally elect directors without having made any associates, successors or assigns.

The fourth section of a charter provided that the directors should be chosen by the members of the corporation, at their annual meeting, and the tenth section enacted that the annual meeting of the corporation for the choice of directors should be holden at such time and place as might be provided by the by-laws· The grantees met, and after voting to accept the charter, and after electing directors, adopted a code of by-laws. *Held,* that the election of the directors was valid, although it was before the adoption of the by-laws.

In EQUITY. The bill alleges that upon the 30th of June, 1847, the Manchester and Lawrence Railroad was incorporated by the Legislature, with authority to build a railroad from the State line, in Salem, to any point on the Concord Railroad in Manchester and the intermediate towns. The fourth section of the charter provides that the stock shall consist of not less than five thousand nor more than eight thousand shares; that there shall be a board of not less than seven directors; and provides also for the appointment of other officers. The charter also provides that certain persons, whose names are given, their successors, associates and assigns, shall be a body corporate, by the name of the Manchester and Lawrence Railroad. It was also alleged that on the 31st of July, 1847, the grantees met at Manchester, in

pursuance of a previous notice, and after having voted to accept the charter, without having taken or made any associates or assigns, chose the defendants the directors of the corporation.    They also adopted a code of by-laws, of which a part of the first article is as follows :

" The annual meeting of the corporation shall be holden on the last Saturday of July in each year, subject to be changed by a majority vote of the directors.    All meetings of the stockholders shall be notified, by advertisement in one or more of the newspapers published in Manchester, N. H., at least ten days before the time of meeting, signed by the president, treasurer or clerk of the corporation."

The ninth article of the by-laws is as follows : " The annual meeting of this corporation shall always be holden in New Hampshire, at such place as the directors may designate, and at the time prescribed in Article I of these by-laws."

On the 31st day of July, and after the adjournment of the meeting of the grantees, the defendants held a meeting at Manchester, and assuming to be the directors of the corporation, under color of their election by the grantees, at their meeting, elected James U. Parker, president of the board and of the corporation, Herman Foster, clerk, and William C. Clarke, treasurer, the said Parker and Foster being two of the defendants.    The grantees having voted to divide the capital stock into five thousand shares of one hundred dollars each, the directors opened books for the reception of applications for stock, and the plaintiff applied for fifty shares.    The whole number of shares applied for exceeded five thousand, and the directors distributed them in such portions and to such persons as they chose, and assigned to the plaintiff three shares, and notified him thereof. The directors ordered an assessment of ten per cent. to be paid on the capital stock on the 20th day of October, 1847. The plaintiff, supposing the defendants to have been legally elected, paid to the treasurer the sum of thirty dollars, being

the sum assessed on his three shares.   The directors adopted the act of December 25th, 1844, entitled " An act to render railroad corporations public in certain cases," and filed in the secretary's office a copy of the record of such vote, and called upon the railroad commissioners to locate and lay out the road, and needlessly expended the money raised by the assessment above mentioned.   The act of December 25th, 1844, was adopted by the stockholders on the 26th of October, 1847, and a vote was passed to call upon the railroad commissioners to locate the road.   The directors filed a copy of this vote in the secretary's office, and again called upon the railroad commissioners to locate the road.

The bill then alleges that the defendants not being legally elected directors, and having no power as such, for the reason that they were elected by the grantees, and not by the grantees with their associates and stockholders, and for the further reason that they were not elected at the annual meeting of the corporation, in accordance with the charter and by-laws, inasmuch as the by-laws were not adopted until after the election of directors, but assuming to be directors, have expended large sums of money in selecting a route for the road, and have thereby created needless expenses to the corporation, and have improperly expended the money raised by the assessments before mentioned.

The bill prays for an answer, and that the defendants may be restrained from acting as directors, and from all further expenditures of the money of the corporation, and for general relief.

The answer admits that the grantees met on the 31st of July, 1847, and without having taken or made any associates or assigns, elected the defendants as directors of the corporation, and adopted a code of by-laws.   After the adjournment of the meeting of the grantees, the defendants held a meeting, and elected officers of the corporation as alleged in the bill.   The answer alleges that the defendants were legally chosen directors of the corporation by the gran-

tees, at their meeting above mentioned, and that the officers of the corporation were also legally elected, and that at the meeting of the grantees in July, it was " voted unanimously that the distribution of the stock under the resolves passed at this meeting, and all other powers of the grantees, be hereby vested in the directors." The answer denies that any of the money of the corporation has been needlessly and improperly expended, but that the expenditures were all necessary and proper.

At a meeting of the stockholders, holden on the 26th day of October, 1847, it was " resolved by the stockholders of the Manchester and Lawrence Railroad Corporation, that they have full confidence in the integrity, zeal and capacity of their present officers, and they are hereby requested to take all necessary measures for the immediate construction of said road." The answer alleges that they have never falsely assumed to be directors of the road, but were duly elected by the grantees, as they had the power to do, and that their proceedings were legal and necessary.

*Hughes, pro se.*

*J. U. Parker,* for the defendants.

Gilchrist, C. J. The charter of the Manchester and Lawrence Railroad was granted on the 30th day of June, 1847. The grantees are nineteen in number. The first section of the charter provides that these grantees, " their successors, associates and assigns, shall be a body corporate," &c.

The bill is filed against seven of the grantees, who are the present directors.

The fourth section of the charter enacts that " the immediate government and direction of the affairs of the corporation shall be vested in a board not exceeding seven direc-

tors, chosen by the members of said corporation, at their annual meeting."

The tenth section provides that Messrs. Bell, Parker and Foster, or any two of them, shall call the first meeting of the grantees.

These persons gave notice, and on the 31st day of July, 1847, the grantees met and voted to accept the charter. Then, "without having taken or made any associates or assigns," the grantees elected the defendants as directors.

The first question is, whether the grantees could elect directors without having made any "associates, successors or assigns?"

There is nothing in the charter which makes it the *duty* of the grantees to appoint any associates. It is incident to every corporation to elect members, if the corporation choose, and this power need not be expressly conferred by the charter. 1 Kyd on Corp. 69. The grantees are vested with certain powers, which they may exercise either by themselves exclusively, or in connexion with others whom they elect as their associates. The grantees of a charter for a bank, a railroad or a manufactory, may, unless restrained by the charter, furnish all the funds necessary for the purposes of the charter. They may elect the officers and agents of the corporation who may be required in the first instance. This power they derive from the highest authority, that of the Legislature. If they please to elect others, and other persons are willing to become members of the corporation, their numbers may be increased in this way, because their power so to do is an incidental one. But it is a *power*, and not a *duty*. If it were supposed that the object of the charter were one impracticable to be attained, or that capital invested under it would be lost on account of its hazardous character, it might be difficult, perhaps impossible, to induce any others than the grantees to engage in it; and they, although selected by the Legislature for this purpose, would be unable to proceed with

their undertaking. But if the investment were supposed to be profitable, associates would readily be found to share the expected profits. But it could never have been the intention of the Legislature that the action of the grantees should depend upon the contingency of their being able to induce other persons to become their associates, and it is believed that in none of the numerous cases in which the powers and duties of incorporations have been investigated, has it ever been supposed that the grantees of a charter had not all the privileges of the charter, unless some addition to their number were expressly required, or unless such addition were necessarily to be inferred from the language of the grant.

It is also to be remarked that successors, associates and assigns are all, by the charter, in the same category. If *associates* must be made before the grantees can act, so also must *successors*, which would be a *reductio ad absurdum*.

The first position taken by the orator is entirely untenable and unsupported by authority or reasoning. The Legislature intended merely to incorporate the grantees, and such persons as should become their associates, successors or assigns.

II.   The second position taken by the orator is, that the directors were not elected at the annual meeting of the corporation, in accordance with the provisions of the charter and by-laws, inasmuch as the by-laws were not adopted until after the election of the directors.

The fourth section provides that the directors shall be chosen by the members of the corporation at their annual meeting.

The tenth section enacts that the annual meetings of the corporation for the choice of directors, shall be holden at such time and place in the State as may be provided by the by-laws.

On the last Saturday in July, 1847, the grantees met and transacted certain business in the following manner.

Hughes *v.* Parker.

I.   Voted to accept the charter.

II.   Elected directors.

III.   Adopted by-laws.

In relation to the validity of the election of the directors, the only question is one of *time*. Because they were elected before the adoption of the by-laws, it is said that their acts were all illegal, and that they should be restrained from further action. To authorize any tribunal to attach such paramount importance to the precise hour when an act of this kind is done, there should exist some rigid principle which the tribunal cannot disregard, which it is its *duty* to enforce at all events, and an infraction of which would lead to most dangerous results. There is no complaint in the bill that the acts of the directors are in any way oppressive or improper, except so far as they are illegal. If done by a legally constituted board, they are not assumed to be exceptionable. But there are several grounds well recognized by the decisions, on questions similar to this, upon which the election of directors must be held legal, and their acts valid.

I.   The language of the charter, as to the time of the election of the directors, is *directory* only, and not *imperative*.

In the case of *Rex* v. *Leicester*, 7 B. & C. 12, cited in Dwarris on Statutes 714, a statute for regulating the time of holding the quarter sessions was held to be directory. It was said by the court, "it has been asked what language will make a statute imperative, if this be not so? *Negative* words would have made it so, but those used are in the affirmative only."

When the precise time is not of the essence of the thing done, as in this case, the language is often held to be directory only. In *Rex* v. *Loudale*, 1 Burrow 447, Lord *Mansfield* says: "There is a known distinction between circumstances which are of the essence of a thing required to be done by statute, and clauses merely directory. The pre-

cise time, in many cases, is not of the essence." See also *Allen* v. *Bruce*, 12 N. H. Rep. 418.

II. The acts having all been done at the same meeting, and there being only a question of time, that may be regarded as having been done first, which should have taken precedence. Such a change in the order of the business affords no ground for the interposition of a court of chancery.

III. The vote adopting the by-laws may be regarded as what it was, in substance, a ratification of the previous choice of directors.

IV. Irregular elections, even if this election might be regarded as an irregular one, are *voidable* only, and not *void*. If the directors might be considered as *irregularly* elected, still they may hold their offices until their right is questioned and avoided by *quo warranto*, or some other suitable proceeding. Until that time, their acts are valid and binding. Their right to their offices cannot be questioned in this collateral manner. *Bank of United Sates* v. *Dandridge*, 12 Wheat. 79.

*Bill dismissed with costs.*